Dan Stormer, Esq. [S.B. #101967]
Caitlan McLoon, Esq. [S.B. #302798]
HADSELL STORMER & RENICK LLP
128 N. Fair Oaks Avenue
Pasadena, California 91103
Telephone: (626) 585-9600/Facsimile: (626) 577-7079

Josh Piovia-Scott, Esq. [S.B. #222364]
HADSELL STORMER & RENICK LLP
4300 Horton Street, #15
Emeryville, California 94608
Telephone: (626) 585-9600/Facsimile: (626) 577-7079

C. Joe Sayas, Jr., Esq. [S.B. #122397]
Karl P. Evangelista, Esq. [S.B. #302798]
LAW OFFICES OF C. JOE SAYAS, JR.
700 North Central Avenue, Suite 235
Glendale, California 91203
Telephone: (818) 291-0088/Facsimile: (818) 240-9955

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KHANLY SAYCON, JR., and ANNA LUZ SAYCON, individually and as surviving heirs and successors in interest of MHARLOUN SAYCON (deceased),<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF LONG BEACH, ROBERT LUNA, VUONG NGUYEN, and ROBERT CRUZ,<br><br>Defendants. | Case No.: 2:16-cv-05614 JFW (Asx)<br><br>[Assigned to the Honorable John F. Walter - Courtroom 7A]<br><br>**[PROPOSED] FIRST AMENDED COMPLAINT FOR DAMAGES**<br><br>1.  42 U.S.C. § 1983 - Excessive Force<br><br>2.  42 U.S.C. § 1983 - Deprivation of the Rights of Plaintiffs to Familial Relationship with Decedent<br><br>3.  42 U.S.C. § 1983 - *Monell* Liability<br><br>4.  Violation of Title II of the Americans wth Disabilities Act (42 U.S.C. § 12131)<br><br>5.  Violation of Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794)<br><br>**DEMAND FOR JURY TRIAL** |

1

**INTRODUCTION**

1.      Mharloun Saycon's life was tragically cut short on December 14, 2015, when he was wrongfully shot and killed by Officer Vuong Nguyen of the Long Beach Police Department.  Nguyen and his partner, Officer Robert Cruz, were dispatched to Looff's Lite-A-Line Casino Game of Skill in response to a report that a customer there was carrying a knife.  When they arrived, Defendant officers found Mharloun sitting alone in a chair at the front of the casino, watching television with a pocket knife closed on his lap.  No one inside Looff's was hurt or in danger.  The officers, however, came in with their weapons drawn, shouting at Mharloun to drop his pocket knife.  When Mharloun did not immediately respond, the officers tased him, and then Cruz lunged at Mharloun and beat him in the head with a baton.  Only seconds later, Nguyen opened fire from nearly fifteen feet away, shooting into the busy casino, and emptying his clip into Mharloun's chest, arm, and abdomen.  Mharloun died on the spot, less than a minute after Defendant officers entered the building.

2.      Mharloun, a 39-year-old Filipino-American man, suffered from a mental disability.  Despite being made aware of this disability, Defendants Nguyen and Cruz did not accommodate him.  Rather, they came into Looff's aggressively, prepared to attack and kill.  Nguyen killed Mharloun even though neither officer was in danger, and even though clear alternatives were present to avoid the use of lethal force.  If Defendants had followed protocols, policies, procedures, and training that are standard in their field and required by law, they would have taken less than lethal measures to handle the situation, rather than senselessly inflame it as they did.  Instead, Defendants deprived Plaintiffs of their loving son.  The actions of Nguyen and Cruz, and those of Defendant City of Long Beach and its officers and employees, have devastated Mharloun's family and the community at large, which is again grappling with the department's shockingly cavalier attitude toward officer-involved shootings.

3.      Plaintiffs bring this action for damages against Defendants for general, compensatory, and statutory damages, costs and attorneys' fees, declaratory relief and

1

training resulting from Defendants' unlawful and egregious conduct, as alleged herein. Additionally, Plaintiffs seek punitive damages against the individual Defendants.

## JURISDICTION

4.      This Complaint seeks damages for violations of the civil rights, privileges, and immunities guaranteed by the First, Fourth, and Fourteenth Amendments of the United States Constitution, pursuant to 42 U.S.C. §§ 1983 and 1988, and for violations of Title II of the Americans With Disabilities Act, 42 U.S.C. § 12131, and the Rehabilitation Act, 29 U.S.C. § 794.

5.      This Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. §§ 1331 and 1343.

## VENUE

6.      Plaintiffs' claims arose in the County of Los Angeles, California.  Venue therefore lies in the Central District of California pursuant to 28 U.S.C. § 1391(b)(2).

## PARTIES

7.      Plaintiff Khanly Saycon, Jr. is the father of Mharloun Saycon, and a resident of Los Angeles County.

8.      Plaintiff Anna Luz Saycon is the mother of Mharloun Saycon, and a resident of Los Angeles County.

9.      Defendant City of Long Beach ("the City") was and is a legal political entity established under the laws of the State of California, with all the powers specified and necessarily implied by the Constitution and laws of the State of California and exercised by a duly elected City Council and/or their agents and officers.  The City is responsible for the actions, inactions, policies, procedures, practices, and customs of the Long Beach Police Department ("LBPD") and its agents and employees.  At all relevant times, the City was and continues to be responsible for assuring that the actions of the LBPD and its agents and employees comply with the Constitutions of the State of California and of the United States and any other applicable laws and regulations.

10.     Defendant Robert G. Luna is the duly appointed Chief of Police for the

**FIRST AMENDED COMPLAINT FOR DAMAGES**

LBPD, and an employee of the City.  Defendant Luna holds the highest position in the LBPD and is and was responsible for the hiring, screening, training, retention, supervision, discipline, counseling, and control of all LBPD employees and agents.  He also is and was responsible for the promulgation of the policies, procedures, and customs pursuant to which the acts and failures to act alleged herein were committed.  Defendant Luna is sued individually as well as in his official capacity for the purpose of ensuring that Plaintiffs may obtain complete and effective injunctive relief as against the LBPD, whose actions and conduct are under the control and authority of the current Police Chief.

11.    Defendant Vuong Nguyen ("Nguyen") is and was, at all times relevant to this action, an employee of the LBPD who on December 14, 2015, injured and fatally shot Mharloun Saycon without justification.

12.    Defendant Robert Cruz ("Cruz") is and was, at all times relevant to this action, an employee of the LBPD who on December 14, 2015, struck and injured Mharloun with a taser and police baton without justification.

13.    Defendants Luna, Nguyen, and Cruz engaged in the acts and omissions alleged herein under color of state law.

14.    Plaintiffs are informed and believe and thereon allege that at all times relevant herein, Defendants and each of them were the agents, employees, servants, joint venturers, partners, and/or co-conspirators of the other Defendants named in this Complaint and that at all times, each of the Defendants was acting within the course and scope of said relationship with Defendants.

15.    Plaintiffs are informed and believe, and thereupon allege, that at all times material herein, each of the Defendants was the agent or employee of, and/or working in concert with, his/her co-Defendants and was acting within the course and scope of such agency, employment, and/or concerted activity.  Plaintiffs allege that to the extent certain acts and omissions were perpetrated by certain Defendants, the remaining Defendant or Defendants confirmed and ratified said acts and omissions.

16.    Whenever and wherever reference is made in this complaint to any act or

3

**FIRST AMENDED COMPLAINT FOR DAMAGES**

failure to act by a Defendant or Defendants, such allegations and references shall also be deemed to mean the acts and failures to act of each Defendant acting individually, jointly, and severally.

17.     Plaintiffs exhausted their administrative remedies by filing governmental tort claims with the City of Long Beach on March 17, 2016, pursuant to California Government Code section 910, *et seq*.

## FACTUAL ALLEGATIONS

**A.     Mharloun Saycon's Early Life and Education**

18.     Decedent Mharloun Saycon was born on October 16, 1976 in the Philippines to his parents Khanly Saycon, Jr. and Anna Luz Saycon, Plaintiffs in this action.

19.     In 1978, Khanly, a United States citizen, moved to the United States for work. Mharloun and his younger brother Khanly II remained in the Philippines, where they were raised by their mother and grandmother. Mharloun was a quiet and thoughtful child, and a good student. He was also a natural artist, and would often make "flipbooks" with hand-drawn cartoons, sharing them with friends and family.

20.     In 1985, Mharloun and his brother moved with their mother to the United States, to join their father. Both Khanly and Anna worked at Pepperdine University, where they have been continuously employed for over thirty years.

21.     Mharloun attended Malibu Junior High and then Santa Monica High School, where he was an All Star player on the basketball team and an honors student. Mharloun was a quiet but friendly child, and was well liked by his classmates.

22.     After graduating from high school in 1996, Mharloun enrolled at Santa Monica College in a general studies program. He also started working in retail and the restaurant industry.

**B.     Mharloun Saycon's Schizophrenia Diagnosis and Treatment**

23.     A few years later, when Mharloun was around 23-years-old, he started exhibiting unusual behavior. He was frequently anxious and paranoid, and he stopped eating. After several weeks of this behavior, Khanly and Anna took Mharloun to see

**FIRST AMENDED COMPLAINT FOR DAMAGES**

their family doctor, who recommended he be seen by a specialist at Edelman Westside Mental Health Center. At Edelman, Mharloun was diagnosed with paranoid schizophrenia.

24. Mharloun was placed on medication and started seeing a physician regularly to manage his condition. This treatment was effective at helping to keep Mharloun's symptoms in check. However, he still struggled with schizophrenic episodes, which could be marked by erratic behavior, incoherent conversation, seclusion, and confusion. These episodes could last for a few days or a few months, and made it very difficult for Mharloun to hold a job or finish his degree. As a result of this condition, Mharloun was determined to be permanently disabled, and started receiving SSI.

25. Mharloun was committed to managing his condition and living a productive and normal life. In 2011, Mharloun joined the R.O.A.D.S. program through the Brand New Day Health Maintenance Organization. R.O.A.D.S. is a comprehensive mental health clinic that provides medical care, dental care, and behavioral training for the chronically mentally ill. Mharloun was an active participant at R.O.A.D.S., where he received both his physical and mental health care, along with life coaching on how to interact with others and participate meaningfully in the community. Mharloun visited the R.O.A.D.S. drop-in center three to four times a week. He worked in the R.O.A.D.S. shop, and participated in R.O.A.D.S. community events, often serving as cook for group barbeques and other gatherings. Mharloun was well liked by the staff and other members of the R.O.A.D.S. community.

26. Mharloun lived with his parents Khanly and Anna. In addition to his roles at R.O.A.D.S., Mharloun would help his parents at home. Mharloun frequently cooked dinner for his parents, and helped his mother with the grocery shopping and cleaning. Mharloun was a constant source of support and love to his parents.

**C.    Defendants' Killing of Mharloun**

27. Mharloun was an occasional visitor at Looff's Lite-A-Line Casino Game of Skill ("Looff's"), located on Long Beach Boulevard in Long Beach, California. Looff's

**FIRST AMENDED COMPLAINT FOR DAMAGES**

is a casino arcade dedicated to the game of Lite-A-Line, a unique pastime that combines the mechanics of a pinball machine with the random number selection of bingo.

28.    Looff's has two entrances located on the front side of the building–a north door and a south door.  Inside the arcade are four rows of Lite-A-Line game tables, running east to west.  These game tables resemble small pinball machines, with glass tops covering the game.  In front of each table is a chair for one person to sit and play the game.

29.    On December 14, 2015, at around 4:30 p.m., Mharloun arrived at Looff's and sat down at one of the game tables.  For around four and a half hours, Mharloun remained at Looff's without incident or notice.

30.    At some point around 9 p.m., Jorge Zuniga, a manager at Looff's, spotted Mharloun scratching the top surface of his game table with a pocket knife.  It was a foldable pocket knife with a black handle and a short blade about two or three inches long.

31.    Mr. Zuniga went up to Mharloun and asked him to put the knife away. Mharloun complied.

32.    Mharloun then continued to peaceably walk around Looff's, at some point stopping by the game table of another regular patron, Patrick Donovan, who he had met at Looff's on prior occasions.  He sat next to Mr. Donovan for a few minutes, watching him play and talking.  While they were chatting, Mharloun showed Mr. Donovan his pocket knife.  Mharloun never pointed the knife at him, and Mr. Donovan did not feel threatened by this action; rather, it seemed to him that Mharloun was interested in the pocket knife and wanted to show it off.

33.    However, a few customers seated in the same row as Mr. Donovan also noticed the pocket knife and alerted Mr. Zuniga.  Mr. Zuniga then conferred with another manager, Linda Keo, about how to handle the situation.  Ms. Keo was familiar with Mharloun from his prior visits to Looff's, and knew that he suffered from a mental disability but was well-meaning and gentle.  She decided to go over and talk to him

**FIRST AMENDED COMPLAINT FOR DAMAGES**

1   directly.

2       34.    At this point, Mharloun had wandered to the front of Looff's, near the north

3   entrance, and sat down in a chair facing the front doors. This front area was separated

4   from the game tables by a glass partition. Ms. Keo walked up to the chair, and saw that

5   Mharloun was watching a game on the TV mounted near the front doors with his pocket

6   knife closed and resting on his leg. Mharloun was talking to himself quietly.

7       35.    Ms. Keo talked to Mharloun for a few minutes and then asked him to walk

8   outside with her. The two started towards the north door, but when they reached the

9   entrance, Mharloun did not go out. Instead he stood at the entrance and started playing

10  with his knife again. Ms. Keo decided to get some help in escorting him out, so she

11  walked to the manager's booth and asked Mr. Zuniga to call the police.

12      36.    Mr. Zuniga called the police. He wanted the dispatcher to send someone

13  who could safely escort Mharloun out of Looff's and get him mental health treatment.

14      37.    While Mr. Zuniga was on the phone, Mharloun walked back to the chair and

15  sat down. After a minute or so, he stood up again next to the chair with his back to the

16  door and leaned against the glass partition separating the front of Looff's from the game

17  tables. He started moving his hands along the glass partition and dancing to himself. He

18  was still holding the knife, and was scratching it against the glass partition. He was not

19  within reach of any customers or staff, and was not threatening anyone with the knife,

20  pointing it at anyone, or handling it in a threatening way. In fact, during the five and a

21  half hours he was at Looff's, Mharloun never threatened anyone with the knife or pointed

22  it at anyone.

23      38.    After dancing for a minute or two behind the glass partition, Mharloun

24  closed the pocket knife again and sat back down in the chair facing the front doors.

25      39.    Shortly thereafter, at 10:13 p.m, two Long Beach police officers arrived at

26  Looff's: Defendant Nguyen and his partner Defendant Robert Cruz. Nguyen entered

27  Looff's from the north door while Cruz entered from the south door. When the officers

28  entered Looff's, Mharloun was still sitting calmly in a chair facing the front, with his

**FIRST AMENDED COMPLAINT FOR DAMAGES**

1  pocket knife closed and resting on his leg.  Upon entering, Defendant officers had a clear

2  view of Mharloun and the rest of the interior and could see that he was sitting alone,

3  separated from any other customer in the arcade by a glass partition.  They could also see

4  that he was calm and that the knife was closed in his lap.  At this time, gaming activities

5  were continuing as normal inside Looff's.

6      40.    Despite this clear view of a non-emergency situation, Defendant officers

7  entered the arcade holding their weapons outstretched with both arms, pointed straight at

8  Mharloun.  Upon entering, Defendant officers immediately started shouting at Mharloun

9  to "drop the knife."  However, Mharloun was lost in his own world, and did not react

10  when the officers started yelling at him to drop the knife.  He remained seated, staring off

11  into space.

12      41.    Defendant officers failed to calmly evaluate the situation and engage with

13  Mharloun peaceably, resorting instead to excessive and needless force.  Instead of trying

14  to communicate with Mharloun, both officers hastily decided to use force.  Within

15  seconds of entering the building, Defendant officers started firing their tasers directly at

16  Mharloun's chest.  Defendant officers quickly became frustrated, however, as Mharloun

17  continued to remain seated on his chair, looking down at the taser darts on his chest.

18      42.    Cruz, who had entered from the south door, then rushed towards Mharloun

19  and bludgeoned him at least twice in the head with a baton, causing Mharloun serious

20  injury.

21      43.    Immediately thereafter Nguyen opened fire on Mharloun, while Mharloun

22  remained seated in the chair.  Nguyen fired his gun eight times, while standing about

23  fifteen feet away.  Nguyen shot Mharloun multiple times in the chest, arm, and abdomen,

24  shooting until he ran out of bullets and in such rapid succession as to leave no doubt that

25  he intended to kill Mharloun.  Mharloun slumped to the side into a potted plant next to

26  the chair, and then fell helplessly facedown onto the floor.

27      44.    Officers Nguyen and Cruz then yelled for everyone to leave the arcade.

28  Soon thereafter, the officers placed handcuffs on Mharloun's wrists, although he was

**FIRST AMENDED COMPLAINT FOR DAMAGES**

laying facedown unresponsive on the ground.

45.     Within minutes of the shooting, other Long Beach police officers and first responders arrived.  They turned Mharloun onto his back and started to administer CPR.  However, Mharloun had already been killed by Nguyen's senseless and brutal use of lethal force.

**D.     Defendants have a practice of reliance on deadly force**

46.     Tragically, Officer Nguyen and Cruz's actions are consistent with Defendant City of Long Beach and the Long Beach Police Department's policy and practice of using excessive force and confrontation to intercede with individuals who are mentally disabled, as Mharloun was.  Long Beach has failed to appropriately train and guide its police officers on how to appropriately approach, assess, and interact with disabled individuals like Mharloun, to deescalate situations involving the mentally disabled, and to seek immediate mental health care for them.  As a result, officers like Nguyen unnecessarily rely on deadly force.

47.     On information and belief, these failures in policy and training are further exacerbated by cavalier personnel decisions that infect the Long Beach Police Department, including the selection, retention, and assignment of officers with demonstrable propensities for excessive force, violence, and misconduct, as well as the condoning and encouraging of officers like Nguyen who effectuate such violations with impunity and without any adverse impact on their employment status or benefits.  On information and belief, no disciplinary action has been taken against Defendant Nguyen for the unjustified shooting of Mharloun Saycon.

48.     For these reasons, Defendant City of Long Beach has been responsible for numerous prior incidents of officer-involved shootings that have resulted in community outcry and calls for reform.  These incidents occurred as recently as April 23, 2015, when Long Beach Police Department officers killed 19-year-old Hector Morejon, and May 27, 2015, when Long Beach Police Department officers fatally shot 20-year-old honor student Feras Morad, both of whose families have instituted lawsuits against Long Beach

1    arising out of these deaths.

2    **E.   Defendants' failure to notify Plaintiffs of Mharloun's death**

3          49.    Defendants failed to properly communicate with Plaintiffs concerning

4    Mharloun's death.  Plaintiffs first learned of their son's death the evening after the

5    shooting when they returned home from work and discovered a card from the coroner's

6    office taped to their front door.  The City of Long Beach did not call them or speak to

7    them in person.  Plaintiffs were left to worry about Mharloun for nearly 24-hours, as they

8    did not know why he never returned home the night of December 14.

9    **F.   Plaintiffs have suffered serious injuries as a result of Defendants' actions**

10         50.    Since Mharloun's death, Plaintiffs Khanly Saycon, Jr., and Anna Luz

11   Saycon have suffered devastating and continuous mental and emotional injuries.  Both

12   parents were close to Mharloun, loved him dearly, and fully expected to continue living a

13   long and happy life with his companionship and support.  Since his death, they have lived

14   a nightmare of grief and confusion over how this could happen to Mharloun.

15         51.    In addition to their current mental and emotional injuries, Plaintiffs Khanly

16   Saycon, Jr. and Anna Luz Saycon have and will continue to suffer injuries into the future

17   due to the loss of their son, including the loss of his caring familial relationship.  Plaintiff

18   Estate of Mharloun Saycon has also suffered economic injuries as a result of Defendants'

19   actions.

20                          **CLAIMS OF RELIEF**

21                       **FIRST CAUSE OF ACTION**

22                   **42 U.S.C. § 1983 - Excessive Force**

23   **[Plaintiffs Khanly Saycon, Jr. and Anna Luz Saycon, as Successors in Interest of**

24      **Decedent Mharloun Saycon, Against Defendants Luna, Nguyen, and Cruz]**

25         52.    Plaintiffs reallege and incorporate by reference each and every allegation

26   contained above as though fully set forth herein.

27         53.    Plaintiffs Khanly Saycon, Jr. and Anna Luz Saycon bring this claim for

28   relief in their capacity as the successors in interest of decedent Mharloun Saycon, for

                                 10

whom there is no estate opened pursuant to California Code of Civil Procedure sections 377.30 and 377.32. *See* Attachment 1, Declaration of Khanly Saycon, Jr. and Anna Luz Saycon Pursuant to C.C.P. § 377.32.

54. On or about December 14, 2015, after causes of action arose in his favor, Decedent Mharloun Saycon would have been a Plaintiff in this action had he survived the injuries he sustained.

55. Defendants, acting under color of state law, deprived Mharloun of rights, privileges, and immunities secured by the Constitution and laws of the United States, including those secured by the Fourth Amendment to the Constitution, incorporated and made applicable to the states by the Fourteenth Amendment, by, among other things, unlawfully seizing, beating, and shooting Mharloun, subjecting him to excessive force and to deadly force without sufficient justification.

56. The foregoing wrongful acts of Defendants killed Mharloun. As a proximate result of the foregoing wrongful acts of Defendants, and each of them, Mharloun sustained general damages, including pain and suffering, and a loss of the enjoyment of life and other hedonic damages, in an amount in accordance with proof.

57. In doing the foregoing wrongful acts, Defendants Nguyen and Cruz acted with conscious disregard of Mharloun's rights, in entering Looff's with their weapons drawn, prepared to shoot and kill Mharloun. Said Defendants escalated a peaceful encounter in the way that they approached Mharloun, and ultimately resorted to lethal force without justification. Defendant Luna willfully failed to provide the training necessary to prevent violent encounters with individuals with mental disabilities, including Mharloun Saycon  This lack of training led to Mharloun's senseless killing at the hands of Nguyen and Doe 1, who gave Mharloun no time to comprehend the situation or comply with the officers' requests. Said Defendants' conduct was willful, wanton, malicious, and oppressive, thereby justifying an award to Plaintiffs of exemplary and punitive damages to punish the wrongful conduct alleged herein and to deter such conduct in the future.

**FIRST AMENDED COMPLAINT FOR DAMAGES**

## SECOND CAUSE OF ACTION

### 42 U.S.C. § 1983 - Deprivation of the Rights of Plaintiffs to Familial Relationships with the Decedent

### [Plaintiffs Khanly Saycon, Jr. and Anna Luz Saycon Against Defendants Luna, Nguyen,  and Cruz]

58.    Plaintiffs reallege and incorporate by reference each and every allegation contained above as though fully set forth herein.

59.    Defendants, acting under color of state law, deprived Plaintiffs of their right to a familial relationship with decedent Mharloun Saycon without due process of law in violation of the Fourteenth Amendment by their use of unreasonable, unjustified force and violence, without provocation, which shocks the conscience and demonstrates an intent to harm, causing injuries which resulted in Mharloun's death.

60.    As a proximate result of the foregoing wrongful acts of Defendants, and each of them, Plaintiffs sustained general damages, including grief, emotional distress, and pain and suffering and loss of comfort and society, and special damages, including loss of support, in an amount in accordance with proof.

61.    In doing the foregoing wrongful acts, Defendants Nguyen and Cruz acted with conscious disregard of Mharloun's rights, in entering Looff's with their weapons drawn, prepared to shoot and kill Mharloun.  Said Defendants escalated a peaceful encounter in the way that they approached Mharloun, and ultimately resorted to lethal force without justification.  Defendant Luna willfully failed to provide the training necessary to prevent violent encounters with individuals with mental disabilities, including Mharloun Saycon   This lack of training led to Mharloun's senseless killing at the hands of Nguyen and Doe 1, who gave Mharloun no time to comprehend the situation or comply with the officers' requests.  Said Defendants' conduct was willful, wanton, malicious, and oppressive, thereby justifying an award to Plaintiffs of exemplary and punitive damages to punish the wrongful conduct alleged herein and to deter such conduct in the future.

**THIRD CAUSE OF ACTION**

**42 U.S.C. § 1983 -** *Monell* **Liability**

**[All Plaintiffs Against Defendants City of Long Beach and Chief Luna]**

62.     Plaintiffs reallege and incorporate by reference each and every allegation contained above as though fully set forth herein.

63.     Plaintiffs are informed and believe, and thereon allege that, at all times herein mentioned Defendants City of Long Beach and Chief Luna, with deliberate indifference, and conscious and reckless disregard to the safety, security, and constitutional and statutory rights of decedent and plaintiffs, including the right to be free from unreasonable seizures and excessive force under the Fourth and Fourteenth Amendments, the right to procedural and substantive due process, and the right to receive medical care, maintained, enforced, tolerated, ratified, permitted, acquiesced in, and/or applied, among others, the policies, practices and customs described above.

64.     As a direct and proximate result of the foregoing, decedent was shot and killed and suffered damages, and plaintiffs sustained injuries and damages as proved.

**FOURTH CAUSE OF ACTION**

**Violation of Title II of the Americans with Disabilities Act (42 U.S.C. § 12131)**

**[Plaintiffs Khanly Saycon, Jr. and Anna Luz Saycon, as Successors in Interest of**

**Decedent Mharloun Saycon, Against Defendant City of Long Beach]**

65.     Plaintiffs reallege and incorporate by reference each and every allegation contained above as though fully set forth herein.

66.     Congress enacted the ADA upon finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms for discrimination continue to be a "serious and pervasive social problem."  42 U.S.C. § 12101(a)(2).

67.     In response to these findings, Congress explicitly stated that the purpose of the ADA is to provide "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "clear, strong, consistent,

13

1    enforceable standards addressing discrimination against individuals with disabilities." 42

2    U.S.C. § 12101(b)(1)-(2).

3         68.    Title II of the ADA provides in pertinent part: "[N]o qualified individual

4    with a disability shall, by reason of such disability, be excluded from participation in or

5    be denied the benefits of the services, programs, or activities of a public entity, or be

6    subjected to discrimination by any such entity." 42 U.S.C. § 12132.

7         69.    The U.S. Department of Justice's regulations implementing Title II, 28

8    C.F.R. § 35.160, require public entities to take appropriate steps to ensure that

9    communications with members of the public with disabilities are as effective as

10   communications with others.

11        70.    At all times relevant to this action, Defendant City of Long Beach was a

12   public entity within the meaning of Title II of the ADA and provided programs, services,

13   and activities to the general public.

14        71.    The U.S. Department of Justice, Civil Rights Division, Disability Rights

15   section has published, "Commonly Asked Questions About the Americans with

16   Disabilities Act and Law Enforcement," a document in which the U.S. Department of

17   Justice provides guidelines in the interpretation of Title II of the ADA (the Guidelines).

18   In the Guidelines, the Department of Justice notes that the ADA affects virtually

19   everything that police officers and deputies do, including providing emergency medical

20   services, arresting, booking, and holding suspects, and other duties.

21        72.    At all times relevant to this action, decedent Mharloun was a qualified

22   individual in that he was a citizen of the State of California and resident in the City of

23   Los Angeles and thereby entitled and qualified to receive and participate in the programs,

24   services, and activities provided by Defendant City of Long Beach.

25        73.    Mharloun was a person with a disability within the meaning of Title II of the

26   ADA in that he suffered from paranoid schizophrenia, which resulted in substantial

27   limitations in his mental and emotional processes such as processing orders and

28   interacting with others.

**FIRST AMENDED COMPLAINT FOR DAMAGES**

74.     Through its acts and omissions described herein, Defendant City of Long Beach violated Title II of the ADA by excluding Mharloun from participation in, by denying him the benefits of, and subjecting him to discrimination in the benefits and services it provides to the general public.

75.     Through the acts and omissions of Defendant City of Long Beach and its agents and employees described herein, Defendant City of Long Beach subjected Mharloun to discrimination on the basis of his disability in violation of Title II of the ADA by failing to provide communication that is as effective as communication provided to the general public, by failing to provide emergency medical services that are as effective and provide the same benefits as emergency medical services provided to the general public, and by failing to provide security for Mharloun's person that provided the same benefits as that provided to the general public.

76.     Through the acts and omissions of Defendant City of Long Beach and its agents and employees described herein, Defendant City of Long Beach denied to Mharloun the opportunity to receive the benefits of or to participate in the programs, services, and activities they provide, including the service or activity of communication, the service, program or activity of receiving the provision of emergency medical services, and the service of providing security for Mharloun's person, particularly with regard to providing control, restraint, communication, use of force, and custodial services.

77.     Through the acts and omissions of Defendant City of Long Beach and its agents and employees described herein, Defendant City of Long Beach subjected Mharloun to discrimination on the basis of his disability in violation of Title II of the ADA by failing to provide medical treatment, including the provision of personnel who were appropriately trained in medical, psychiatric, and/or psychological treatment and appropriately trained medical, psychiatric, and psychological treatment and appropriately trained medical, psychiatric, and psychological personnel are provided and made available for the general public.

78.     Plaintiffs are informed, believe, and thereon allege that Defendant City of

Long Beach and its agents and employees have failed and continue to fail to take into account and provide reasonable accommodations for persons with mental disabilities by failing to:

    a.    Adopt and enforce policies and procedures for communicating effectively, controlling, and interacting with persons with mental disabilities;

    b.    Adopt and enforce policies and procedures for providing persons with mental disabilities access to medical facilities, including the provision of employees with medical training and medical resources to communicate, interact with, and control such persons;

    c.    Train and supervise City of Long Beach and LBPD officers and employees to communicate effectively, control, and interact with persons with mental disabilities;

    d.    Train and supervise City of Long Beach and LBPD officers and employees regarding the cognition and behavior of persons with mental disabilities; and

    e.    Train and supervise City of Long Beach and LBPD officers and employees that they should not use force, or put themselves in positions where the use of force may become necessary without first notifying and obtaining the assistance of persons who have the requisite training and experience in communicating effectively with and controlling and interacting with persons with mental disabilities.

79.    As a direct and proximate result of the aforementioned acts, including but not limited to Defendant's deliberate indifference to the violation of Mharloun's federally protected rights, Mharloun suffered and Plaintiffs suffered and continue to suffer humiliation, hardship, anxiety, and indignity, and severe mental and emotional anguish, and Mharloun was killed.

80.    Pursuant to 42 U.S.C. § 12133, Plaintiffs are entitled to recover the

compensatory damages described herein, and reasonable attorneys' fees and costs incurred in bringing this action.

## FIFTH CAUSE OF ACTION

**Violation of Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794)**

**[Plaintiffs Khanly Saycon, Jr. and Anna Luz Saycon, as Successors in Interest of Decedent Mharloun Saycon, Against Defendant City of Long Beach]**

81.　Plaintiffs reallege and incorporate by reference each and every allegation contained above as though fully set forth herein.

82.　Section 504 of the Rehabilitation Act of 1973 provides in pertinent part: "[N]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits, or be subjected to discrimination under any program or activity receiving federal financial assistance . . . ." 29 U.S.C. § 794.

83.　Decedent Mharloun Saycon, at all times relevant herein, was a qualified individual with a disability within the meaning of the Rehabilitation Act because he suffered from paranoid schizophrenia, an impairment that substantially limited one or more of his major life activities. *See* 29 U.S.C. § 705(20)(B).

84.　At all times relevant to this action, Defendant City of Long Beach was a recipient of federal funding within the meaning of the Rehabilitation Act.

85.　Through their acts and omissions described herein, Defendant City of Long Beach has violated the Rehabilitation Act, including all applicable implementing regulations, by excluding Mharloun from participation in, denying him the benefits of, and subjecting him to discrimination in the benefits and services they provide to the general public.

86.　As a direct and proximate result of the aforementioned acts, including but not limited to Defendant's deliberate indifference to the violation of Mharloun's federally protected rights, decedent Mharloun suffered great pain, suffering and death, and Plaintiffs have suffered and continue to suffer humiliation, hardship, anxiety, indignity,

**FIRST AMENDED COMPLAINT FOR DAMAGES**

and severe mental and emotional anguish.

87. Pursuant to 29 U.S.C. § 794(a), Plaintiffs are entitled to recover the damages described in this Complaint and reasonable attorneys' fees and costs incurred in bringing this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief:

1. For compensatory, general, and special damages against each Defendant, jointly and severally, amounts to be proven at trial;

2. Punitive and exemplary damages against individually named Defendants Luna, Nguyen, and Cruz, in an amount appropriate to punish Defendant(s) and deter others from engaging in similar misconduct;

3. Prejudgment interest;

4. For costs of suit and reasonable attorneys' fees and costs as authorized by statute or law;

5. For restitution as the Court deems just and proper;

6. For such other relief, including injunctive and/or declaratory relief, as the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury in this action.


DATED: November 21, 2016          Respectfully submitted,

LAW OFFICES OF C. JOE SAYAS, JR.

HADSELL STORMER & RENICK LLP


By   /s/ - Dan Stormer
    Dan Stormer
    Josh Piovia-Scott
    Caitlan McLoon
Attorneys for Plaintiffs

18

1  Dan Stormer, Esq. [S.B. #101967]
   Josh Piovia-Scott, Esq. [S.B. #222364]
2  Caitlan McLoon, Esq. [S.B. #302798]
   HADSELL STORMER & RENICK LLP
3  128 N. Fair Oaks Avenue
   Pasadena, California 91103
4  Telephone: (626) 585-9600
   Facsimile: (626) 577-7079
5
   C. Joe Sayas, Jr., Esq. [S.B. #122397]
6  LAW OFFICES OF C. JOE SAYAS, JR.
   700 North Central Avenue, Suite 235
7  Glendale, California 91203
   Telephone: (818) 291-0088
8  Facsimile: (818) 240-9955
9  Attorneys for Plaintiffs
10
               SUPERIOR COURT OF THE STATE OF CALIFORNIA
11
                    FOR THE COUNTY OF LOS ANGELES
12
13  _____
    KHANLY SAYCON, JR., and ANNA LUZ        ) Case No.:
14  SAYCON, individually and as surviving heirs )
    and successors in interest of MHARLOUN   ) DECLARATION OF KHANLY SAYCON,
15  SAYCON,                                  ) JR. AND ANNA LUZ SAYCON
                                             ) PURSUANT TO C.C.P. § 377.32
16         Plaintiffs,                       )
                                             )
17              v.                           )
                                             )
18  CITY OF LONG BEACH, ROBERT LUNA,         )
    VUONG NGUYEN, and DOES 1-20, inclusive,  )
19                                           )
           Defendants.                       )
20                                           )
                                             )
21                                           )
                                             )
22  _____          )
23
24
25
26
27
28
    _____
        JOINT DECLARATION OF KHANLY SAYCON, JR. AND ANNA LUZ SAYCON
                      PURSUANT TO CCP § 377.32

**JOINT DECLARATION OF KHANLY SAYCON JR. AND ANNA LUZ SAYCON**

I, Khanly Saycon, Jr., along with my wife, Anna Luz Saycon, submit this declaration pursuant to C.C.P. § 377.32 and hereby declare as follows:

1.      We are both over the age of 18 years. We have personal knowledge of the facts contained in this declaration, and if called upon as witnesses, we could and would testify competently to the truth of the facts stated herein.

2.      We are the parents of Mharloun Saycon, who was killed by an officer of the Long Beach Police Department on December 14, 2015 in Long Beach, California. Mharloun Saycon had no predeceased spouse or domestic partner and has no surviving spouse, domestic partner, or issue.

3.      No proceeding is now pending in the State of California for administration of the Estate of Mharloun Saycon. Further, no proceeding for administration of the Estate of Mharloun Saycon is pending in any other state court at this time.

4.      I, along with my wife, are the successors in interest to Mharloun Saycon, as defined in Section 377.11 of the Code of Civil Procedure, and succeed to his interest in the above-entitled proceeding.

5.      No other person has a superior right to commence the above-entitled proceeding or to be substituted for Mharloun Saycon in the above-entitled proceeding.

6.      A certified copy of Mharloun Saycon's death certificate is attached hereto as Exhibit A and incorporated herein by reference.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration is executed on _July 28_, 2016 at Pasadena, California.

_____
Khanly Saycon, Jr.

_____
Anna Luz Saycon

1

**JOINT DECLARATION OF KHANLY SAYCON, JR. AND ANNA LUZ SAYCON
PURSUANT TO CCP § 377.32**

Exhibit A

# CITY OF LONG BEACH

## DEPARTMENT OF HEALTH AND HUMAN SERVICES

CERTIFICATION OF VITAL RECORD

LONG BEACH, CALIFORNIA

3052015257574     **CERTIFICATE OF DEATH**     3201562003287

STATE FILE NUMBER    USE BLACK INK ONLY / NO ERASURES, WHITEOUTS OR ALTERATIONS    LOCAL REGISTRATION NUMBER

VS-11•REV 3/08

| | | | | | |
|---|---|---|---|---|---|
| 1. NAME OF DECEDENT—FIRST (Given) MHARLOUN | 2. MIDDLE V | 3. LAST (Family) SAYCON | | | |
| AKA, ALSO KNOWN AS – Include full AKA (FIRST, MIDDLE, LAST) MHARLOUN VERDEJO SAYCON | 4. DATE OF BIRTH mm/dd/ccyy 10/16/1976 | 5. AGE Yrs. 39 | IF UNDER ONE YEAR Months Days | IF UNDER 24 HOURS Hours Minutes | 6. SEX M |
| 7. BIRTH STATE/FOREIGN COUNTRY PI | 8. SOCIAL SECURITY NUMBER 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 | 11. EVER IN U.S. ARMED FORCES? YES ☒ NO | 12. MARITAL STATUS/SRDP NEVER MARRIED | 7. DATE OF DEATH mm/dd/ccyy 12/14/2015 | 8. HOUR (24 Hrs) 2232 |
| 13. EDUCATION – Highest Level/Degree (see worksheet on back) SOME COLLEGE | 14/15. WAS DECEDENT HISPANIC/LATINO(a)/SPANISH? (If yes, see worksheet on back) YES ☒ NO | 16. DECEDENT'S RACE – Up to 3 races may be listed (see worksheet on back) FILIPINO | | | |
| 17. USUAL OCCUPATION – Type of work for most of life. DO NOT USE RETIRED WAREHOUSE | 18. KIND OF BUSINESS OR INDUSTRY (e.g., grocery store, road construction, employment agency, etc.) SHIPPING COMPANY | | | | 19. YEARS IN OCCUPATION 1 |

DECEDENT'S PERSONAL DATA

| | | | | |
|---|---|---|---|---|
| 20. DECEDENT'S RESIDENCE (Street and number, or location) 21425 S.AVALON BLVD SPC29 | | | | |
| 21. CITY CARSON | 22. COUNTY/PROVINCE LOS ANGELES | 23. ZIP CODE 90745 | 24. YEARS IN COUNTY 2 | 25. STATE/FOREIGN COUNTRY CA |

USUAL RESIDENCE

| | |
|---|---|
| 26. INFORMANT'S NAME, RELATIONSHIP KHANLY F SAYCON, FATHER | 27. INFORMANT'S MAILING ADDRESS (Street and number, or rural route number, city or town, state and zip) 21425 S.AVALON BLVD SPC29, CARSON, CA 90745 |

INFORMANT

| | | | |
|---|---|---|---|
| 28. NAME OF SURVIVING SPOUSE/SRDP—FIRST | 29. MIDDLE | 30. LAST (BIRTH NAME) | |
| 31. NAME OF FATHER/PARENT–FIRST KHANLY | 32. MIDDLE F | 33. LAST SAYCON | 34. BIRTH STATE PI |
| 35. NAME OF MOTHER/PARENT–FIRST ANNA LUZ | 36. MIDDLE P | 37. LAST (BIRTH NAME) VERDEJO | 38. BIRTH STATE PI |

SPOUSE/SRDP AND PARENT INFORMATION

| | | |
|---|---|---|
| 39. DISPOSITION DATE mm/dd/ccyy 01/11/2016 | 40. PLACE OF FINAL DISPOSITION RESIDENCE OF KHANLY F. SAYCON 21425 S. AVALON BLVD SPC29, CARSON, CA 90745 | |
| 41. TYPE OF DISPOSITION(S) CR/RES | 42. SIGNATURE OF EMBALMER ▶ JOANNA CHAVEZ | 43. LICENSE NUMBER EMB8891 |
| 44. NAME OF FUNERAL ESTABLISHMENT FUNERARIA DEL ANGEL MCNERNEY'S MORTUARY | 45. LICENSE NUMBER FD858 | 46. SIGNATURE OF LOCAL REGISTRAR ▶ MITCHELL KUSHNER, MD   47. DATE mm/dd/ccyy 01/08/2016 |

FUNERAL DIRECTOR / LOCAL REGISTRAR

| | | |
|---|---|---|
| 101. PLACE OF DEATH BUSINESS | 102. IF HOSPITAL, SPECIFY ONE IP OP/OP DOA | 103. IF OTHER THAN HOSPITAL, SPECIFY ONE Hospice Nursing Home- JC Decedent's Home-H ☒ Other |
| 104. COUNTY LOS ANGELES | 105. FACILITY ADDRESS OR LOCATION WHERE FOUND (Street and number, or location) 2500 LONG BEACH BOULEVARD | 106. CITY LONG BEACH |

PLACE OF DEATH

| | | |
|---|---|---|
| 107. CAUSE OF DEATH Enter the chain of events — diseases, injuries, or complications — that directly caused death. DO NOT enter terminal events such as cardiac arrest, respiratory arrest, or ventricular fibrillation without showing the etiology. DO NOT ABBREVIATE. | | Time Interval Between Onset and Death | 108. DEATH REPORTED TO CORONER? |
| IMMEDIATE CAUSE (Final disease or condition resulting in death) (A) MULTIPLE GUNSHOT WOUNDS | | (A) RAPID | YES ☒ NO 2015-06607 |
| Sequentially, list conditions, if any, leading to cause on Line A. Enter UNDERLYING CAUSE (disease or injury that initiated the events resulting in death) LAST (B) | | (B) | 109. BIOPSY PERFORMED? YES ☒ NO |
| (C) | | (C) | 110. AUTOPSY PERFORMED? ☒ YES NO |
| (D) | | (D) | 111. USED IN DETERMINING CAUSE? ☒ YES NO |
| 112. OTHER SIGNIFICANT CONDITIONS CONTRIBUTING TO DEATH BUT NOT RESULTING IN THE UNDERLYING CAUSE GIVEN IN 107 NONE | | | |
| 113. WAS OPERATION PERFORMED FOR ANY CONDITION IN ITEM 107 OR 112? (If yes, list type of operation and date.) NO | | | 113A. IF FEMALE, PREGNANT IN LAST YEAR? YES NO UNK |

CAUSE OF DEATH

| | | | |
|---|---|---|---|
| 114. I CERTIFY THAT TO THE BEST OF MY KNOWLEDGE DEATH OCCURRED AT THE HOUR, DATE, AND PLACE STATED FROM THE CAUSES STATED. | 115. SIGNATURE AND TITLE OF CERTIFIER ▶ | 116. LICENSE NUMBER | 117. DATE mm/dd/ccyy |
| Decedent Attended Since (A) mm/dd/ccyy   Decedent Last Seen Alive (B) mm/dd/ccyy | 118. TYPE ATTENDING PHYSICIAN'S NAME, MAILING ADDRESS, ZIP CODE | | |

PHYSICIAN'S CERTIFICATION

| | | | |
|---|---|---|---|
| 119. I CERTIFY THAT IN MY OPINION DEATH OCCURRED AT THE HOUR, DATE, AND PLACE STATED FROM THE CAUSES STATED. MANNER OF DEATH Natural Accident ☒ Homicide Suicide Pending Investigation Could not be determined | 120. INJURED AT WORK? YES ☒ NO UNK | 121. INJURY DATE mm/dd/ccyy 12/14/2015 | 122. HOUR (24 Hours) 2212 |
| 123. PLACE OF INJURY (e.g., home, construction site, wooded area, etc.) BUSINESS | | | |
| 124. DESCRIBE HOW INJURY OCCURRED (Events which resulted in injury) SHOT BY OFFICER(S) | | | |
| 125. LOCATION OF INJURY (Street and number, or location, and city, and zip) 2500 LONG BEACH BOULEVARD, LONG BEACH, CA 90806 | | | |
| 126. SIGNATURE OF CORONER / DEPUTY CORONER ▶ EVONNE D REED | 127. DATE mm/dd/ccyy 12/30/2015 | 128. TYPE NAME, TITLE OF CORONER / DEPUTY CORONER EVONNE D REED, DEPUTY CORONER | |

CORONER'S USE ONLY

| STATE REGISTRAR | A | B | C | D | E | FAX AUTH.# | CENSUS TRACT |
|---|---|---|---|---|---|---|---|

*010001003120302*

CAL0NGBED1

### CERTIFIED COPY OF VITAL RECORD
STATE OF CALIFORNIA, CITY OF LONG BEACH

This is a true and exact reproduction of the document officially registered and placed on file in the office of the Vital Records Section, Long Beach Department of Health and Human Services.

000612448

DATE ISSUED    FEB 09 2016

HEALTH OFFICER

This copy is not valid unless prepared on an engraved border, displaying the date, seal and signature of the Registrar.

ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE